CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 31 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| LATRONE A. HUGGINS, | ) |
| Plaintiff, | ) Case No. 7:11CV00017 |
| v. | ) |
| | ) MEMORANDUM OPINION |
| WARDEN D. A. BRAXTON, ET AL., | ) By: Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendants. | ) |

Plaintiff Latrone A. Huggins, a Virginia inmate proceeding pro se, has filed this civil rights action, pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Huggins alleges that the defendant prison officials imposed a sudden emergency transfer on him in retaliation for his attempts to start a religious service for Rastafarians.[1] Upon review of the record, the court finds that the complaint must be dismissed.

## Background

Huggins alleges the following sequence of events from which his claims arise. In March 2010, Huggins requested a transfer to Buckingham Correctional Center, which was nearer to his wife and sons. However, Virginia Department of Corrections (VDOC) officials transferred Huggins to Augusta Correctional Center (ACC). The transfer sheet indicated that he was being transferred to ACC and would remain there.

---

[1] Plaintiff has filed a motion to amend his complaint to sue the defendants in their official and personal capacities for retaliating against him. Since the complaint must be dismissed, the court will deny the motion to amend as moot.

Once Huggins arrived at ACC and entered the general population, he discovered that the prison did not have a scheduled group service for inmates of the Rastafarian faith. Huggins had been a practicing Rastafarian for 14 years. He filed a request with the ACC treatment supervisor, Ms. Lawhorn, asking to start a Rastafarian service. She denied the request, stating that there were not enough participants to form such a group and that Huggins could practice his faith in his cell.

Not satisfied with this response, Huggins filed an informal complaint, listing nine inmates who were also practicing Rastafarians. Huggins instructed the other Rasta inmates to file similar informal complaints, asking for a group worship time and access to musical instruments. On April 26, 2010, officials granted the Rastafarian inmates the opportunity to participate in group worship and to use musical instruments. Huggins, with the consent of the other inmates, met with Lawhorn on May 10, 2010. She told him to write up the program needs of his group in an informal complaint, which he did the next day. Huggins also told the other Rastafarian inmates to file informal complaints on the same topics and filed a separate a grievance asking for photocopies and for access to an Ethiopian flag.

On May 17, 2010, about 1:00 p.m., security staff told Huggins to report to his building to pack his things for an emergency transfer to another institution. He asked why he was being moved and was told, "None of your business. You're going because the warden wants you gone." Huggins packed and was immediately transferred from ACC to Pocahontas Correctional Center (PSCC). This prison is three and a half hours from his family and is considered by inmates to be a "dumping ground," because the warden is reputed to be "anti-prisoner-friendly." When Huggins unpacked his property, he discovered that all the informal complaints and request

forms related to his attempts to establish a Rastafarian service at ACC were missing. The submitted informal complaint for the items needed to facilitate the Rastafarian service was never logged or responded to by the ACC warden and his staff.

Huggins filed a grievance, asking why he had been transferred and asserting that he believed the transfer was in retaliation for his efforts to start a Rastafarian service at ACC. Officals replied that there was no evidence to support a retaliatory transfer, but did not state the reason for the transfer. According to Huggins, VDOC regulations allow an emergency transfer only when prison administrators find that a temporary transfer of the inmate is necessary to protect offenders and staff from imminent danger of physical harm, to prohibit offenders from destruction of state property, or to prevent escape. Huggins asserts that none of these criteria were met in his case.

Huggins asserts that previously, ACC officials had similarly retaliated against another Rastafarian inmate, Andrew Campbell. Within days after Campbell filed an informal complaint asking to start a Rastafarian service for ACC inmates, prison officials implemented an emergency transfer to send Campbell to PSCC. Because PSCC did not offer the religious diet that Campbell was receiving at ACC, however, prison authorities immediately transferred him back to ACC.

Huggins alleges three grounds for relief in this lawsuit: (1) unwarranted transfer in retaliation for use of the grievance procedure; (2) retaliatory transfer to punish him for exercising his First Amendment rights to free exercise of his religious beliefs, to redress grievances, and to free speech; (3) improper transfer, in violation of constitutional and state law rights. As relief, he seeks monetary damages.

## Discussion

A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted." An inmate's complaint may be summarily dismissed under this section if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __U.S.__, 129 S. Ct. 1937, 1940 (2009).

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). In determining whether the complaint states a claim, a court must view the factual allegations in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarrantano, 521 F.3d at 302 (omitting internal quotations).

### A. Transfer

An inmate has no constitutional right to be housed in any particular prison, and prison officials have broad discretion to determine the facility at which an inmate is housed. Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that protected liberty interests are generally limited to freedom from restraint which imposes atypical and significant hardship on inmate in relation to

ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 224 (1976) (holding that a valid conviction "empower[s] the State to confine [an inmate] in *any* of its prisons") (emphasis in original); Montayne v. Haymes, 427 U.S. 236, 242 (1976) (holding that a mere transfer from one facility to another does not implicate the Due Process Clause, regardless of whether the transfer is the result of the inmate's misbehavior or is punitive in nature). A state official's failure to abide by state procedural regulations before imposing a change in an inmate's housing or classification status is not a federal due process issue and is, therefore, not actionable under § 1983. Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990).

Under these principles, Huggins has no constitutional claim based on his transfer away from ACC, whether or not the warden complied with VDOC emergency transfer regulations. Moreover, Huggins' claim that the warden's action violated VDOC regulations is not independently actionable under § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). For the stated reasons, the court finds that plaintiff's federal transfer claim must be dismissed, pursuant to § 1915A(b)(1), as legally frivolous. Therefore, the court declines to exercise supplemental jurisdiction over any possible claims Huggins may have under state law regarding his transfer. See 28 U.S.C. § 1367(c).

**B. Retaliation**

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994). To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a

constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Thereafter, plaintiff must demonstrate that he suffered some adverse impact or actual injury. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir.1993). The plaintiff must allege facts showing that his exercise of his constitutional right was a substantial factor motivating the retaliatory action. See, e.g., American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977)); Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" the causation element of a §1983 retaliation claim. Wagner, 13 F.3d at 91.

Inmates do not have a constitutionally protected right to a grievance procedure. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, to the extent that Huggins asserts that the transfer was in retaliation for his exercise of the grievance procedure, he cannot satisfy the first element of a § 1983 retaliation claim.

Huggins also alleges that he was transferred because he exercised his right to redress grievances and his right to practice his religious beliefs. His allegations as a whole, however, offer no support for this assertion. Huggins does not allege facts indicating that officials at ACC met requests for accommodation of Rastafarian religious practices with any animus. On the contrary, ACC provided Inmate Campbell with a religious diet, and after his transfer, officials immediately accommodated his religious dietary needs by sending him back to ACC. Then, once ACC officials learned that a substantial number of Rastafarian inmates wanted to hold group worship services, Huggins' request for a service was granted and Lawhorn met personally with

him to discuss the group's service needs. In light of prison officials' readiness to meet the Rastafarian's religious needs, the court cannot find that the timing of the transfer (one week after the meeting with Lawhorn), officials' comment that the warden wanted him gone, or the disappearance of his informal complaints are sufficient to support a reasonable inference that his requests for religious accommodations were a substantial factor motivating the decision to transfer him to PSCC.

Finally, Huggins argues that his transfer was in retaliation for his exercise of his First Amendment right to join with other inmates in asking for accommodations. The court cannot find that Huggins' instigation of a group grievance campaign was an activity protected by the First Amendment in the prison context. Prison policies restricting inmate solicitation of other inmates to foment group grievances have long been recognized as rationally related to reasonable security objectives of prison administration and, therefore, constitutional. See, e.g., Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 129 (1977) (finding prison regulation against solicitation of inmates to join prisoners' grievance union was rationally related to legitimate prison security interests). Therefore, even if Huggins could demonstrate that officials transferred him because of the grievance campaigns, this activity is not one that can satisfy the first element of a § 1983 retaliation claim. Huggins' retaliation claim under § 1983 will be dismissed, pursuant to § 1915A(b)(1), and any related state law claim will be dismissed without prejudice under § 1367(c).

## Conclusion

For the stated reasons, the court concludes that plaintiff's claims under § 1983 must be dismissed without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim, and that any

related state law claims must be dismissed without prejudice, pursuant to § 1367(c). Because the complaint fails to state viable federal claims, plaintiff's motion for appointment of counsel (DE 5) will be denied. <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1173 (4th Cir. 1978) (finding that court should request attorney to represent indigent, civil plaintiff only if complaint includes colorable claim and plaintiff lacks capacity to present it). An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 31st day of January, 2011.

*/s/ Paul Conrad*
Chief United States District Judge